UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| CHARLES WASHINGTON, JR., R52000, | ) |  |
|---|---|---|
|  | ) |  |
|  | ) | Case No. 14-cv-1188 |
| Petitioner, | ) |  |
| v. | ) | Judge John W. Darrah |
|  | ) |  |
| MICHAEL LEMKE, | ) |  |
|  | ) |  |
| Respondent. | ) |  |

## MEMORANDUM OPINION AND ORDER

Petitioner Charles Washington filed a Petition for Writ of *Habeas Corpus*, pursuant to 28 U.S.C. § 2254, against Respondent Michael Lemke. For the reasons stated below, the Petition is denied. A certificate of appealability shall not issue.

### BACKGROUND

Petitioner is currently incarcerated at the Stateville Correctional Center, where Tarry Williams presides as warden. Michael Lemke was the warden at the time Petitioner filed his *habeas corpus* petition. The Cook County Court, First Judicial District, sentenced Petitioner to thirty years for a conviction of one count of solicitation of murder and one count of solicitation of murder for hire. A jury found Petitioner guilty of attempting to hire an undercover officer to kill Larry Holcomb, a likely witness in Petitioner's then pending murder trial.

During the trial, the evidence showed that Larry Holcomb burglarized an apartment that was controlled by Petitioner. (Resp. at 2.) During the burglary, Holcomb stole a large amount of cocaine, along with several thousand dollars, from Petitioner's apartment. (*Id.*) In an attempt to recover the stolen items, Petitioner kidnapped and murdered Holcomb's mother, Wardella Winchester. (*Id.*) Wardella Winchester's stepdaughter, Dyanna Winchester, was also charged

with murder due to her involvement with Wardella Winchester's death and agreed to testify against Petitioner. (*Id.*)

Much of the evidence presented at trial was in the form of multiple recorded conversations with Petitioner and an Investigator named Conly Dyer, who posed as a hit man. (*Id.*) Agent Matthew Alcoke testified that he was a special agent with the Chicago branch of the FBI. (*Id.* at 3.) Agent Alcoke investigated the kidnapping and death of Wardella Winchester and met with Larry Holcomb and listened to recordings of the ransom phone calls. (*Id.*) Investigator Steven Zepeda testified that he was assigned to investigate the murder-for-hire plot that Petitioner was involved in. (*Id.* at 4.) Investigator Zepeda met with inmate Keith Jones, and they agreed that Jones would introduce Petitioner to an undercover police officer posing as a hit man. (*Id.*) The jury found Petitioner guilty of solicitation of murder and solicitation of murder for hire.

Petitioner raised three claims on direct appeal:

1. He was denied due process when the trial court admitted evidence of (i) his association with apparent gang members and criminals; and (ii) his role in Wardella Winchester's kidnapping and murder;

2. he was not proven guilty of the charged offenses beyond a reasonable doubt; and

3. he was denied due process when the prosecutor misinformed the jury about the difference between solicitation of murder and solicitation of murder for hire.

(Resp. Exh. A.) The Illinois Appellate Court affirmed. (Resp. Exh. C.) Petitioner's Petition for Leave to Appeal ("PLA") to the Illinois Supreme Court raised the same claims that were raised on direct appeal. (Resp. Exh. D.) The PLA was denied on November 25, 2009. (Resp. Exh. E.)

Petitioner appealed on June 28, 2010, in a petition for post-conviction relief pursuant to 725 ILCS 5/122-1, *et seq.*, in the Circuit Court of Cook County. (Resp. Exh. S.)

In the petition, the Petitioner made the following claims:

1. He was denied due process when Investigator Zepeda testified falsely about when and where he first met informant Jones;

2. he was denied due process when the State withheld information about when and where Zepeda first met Jones;

3. he was denied due process when the State presented false affidavits to obtain warrants to record his conversations with Investigator Dyer;

4. he was denied due process when the court denied his motion to suppress statements made to Dyer;

5. he was denied due process when the court cut short his counsel's oral argument on the motion to suppress;

6. trial counsel was ineffective for failing to investigate how and when Jones first informed law enforcement that the Petitioner wanted to hire a hit man;

7. he was denied due process when the trial court admitted certain edited and enhanced audio recordings into evidence;

8. trial counsel was ineffective for failing to object to the State's failure to properly inventory the audio recordings;

9. trial counsel was ineffective for failing to investigate and call an unidentified impeachment witness;

10. he was denied due process when Dyer entrapped him into committing solicitation of murder and solicitation of murder for hire;

11. he was denied due process and the effective assistance of counsel when the affirmative defense of entrapment "was not applied" to him;

12. he was denied due process when the trial court admitted evidence of Petitioner's relationships with apparent criminals and gang members;

13. he was denied due process when the trial court denied his motion *in limine* to exclude evidence of his participation in Wardella Winchester's murder;

14. he was denied due process when the prosecutor made assertions in closing argument that were unsupported by the trial evidence;

15. counsel on direct appeal was ineffective for failing to allege her own ineffectiveness as trial counsel; and

3

16. he was denied due process when the trial court denied his motion for a directed verdict.

(*Id.* at 9.) The trial court dismissed his petition as frivolous and patently without merit. (Resp. Exh. Q.) Petitioner then appealed the trial court's decision to the Appellate Court of Illinois, arguing that trial counsel was ineffective for not requesting an entrapment jury instruction. (Resp. Exh. F.) The Appellate Court affirmed the decision. (Resp. Exh. I.) Petitioner appealed the Appellate Court's decision to the Supreme Court of Illinois, arguing again that trial counsel was ineffective for not requesting the entrapment instruction. (Resp. Exh. J.) The Illinois Supreme Court denied his PLA on September 23, 2013. (*Id.*)

On February 18, 2014, the Petitioner filed a *habeas corpus* petition pursuant to 28 U.S.C. § 2254, alleging the following:

1. He was denied due process when Investigator Zepeda testified falsely about when and where he first met informant Jones;

2. he was denied due process when the State withheld information about when and where Zepeda first met Jones;

3. he was denied due process when the state presented false affidavits to obtain warrants to record his conversations with Investigator Dyer;

4. he was denied due process when the court denied his motion to suppress statements made to Dyer;

5. he was denied due process when the court cut short his counsel's oral argument on the motion to suppress;

6. trial counsel was ineffective for failing to investigate how and when Jones first informed law enforcement that the Petitioner wanted to hire a hit man;

7. he was denied due process when the trial court admitted certain edited and enhanced audio recordings into evidence;

8. trial counsel was ineffective for failing to object to the State's failure to properly inventory the audio recordings;

9. trial counsel was ineffective for failing to investigate and call an unidentified impeachment witness;

10. he was denied due process when Dyer entrapped him into committing solicitation of murder and solicitation of murder for hire and was denied his right to effective assistance of counsel when trial counsel and appellate counsel failed to preserve this claim for appeal and failed to investigate this claim;

11. he was denied due process and the effective assistance of counsel when the affirmative defense of entrapment "was not applied" to him;

12. he was denied due process when the trial court admitted evidence of petitioner's relationships with apparent criminals and gang members;

13. he was denied due process when the trial court denied his motion *in limine* to exclude evidence of his participation in Wardella Winchester's murder;

14. he was denied due process when the prosecutor made assertions in closing argument that were unsupported by the trial evidence;

15. he was denied due process when the prosecutor misinformed the jury about the difference between solicitation of murder and solicitation of murder for hire;

16. counsel, on direct appeal, was ineffective for failing to allege her own ineffectiveness as trial counsel;

17. he was denied due process when the trial court denied his motion for a directed verdict; and

18. he was denied due process when the State concealed and manipulated evidence presented to the grand jury.

(Dkt. 1.) Petitioner also asserts that trial and appellate counsel were ineffective for failing to preserve and present Grounds 1 - 11 and 13 - 15. (*Id.*)

## ANALYSIS

Prior to addressing the merits of Petitioner's § 2254 petition, "the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Johnson v. Foster*, 786 F.3d 501, 504 (7th Cir. 2015) (citing *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)). Therefore, "federal courts will not review a *habeas* petition unless the prisoner

has fairly presented his claims throughout at least one complete round of state-court review," on direct appeal of the prisoner's conviction, or in postconviction proceedings. *Id*. Respondent concedes that Petitioner has exhausted his state court remedies and that his claim is not barred by default. However, the Petitioner only appealed the issue of ineffectiveness of counsel to the Supreme Court of Illinois, which affects many of his eighteen allegations which he filed in Federal Court.

*Grounds 1 - 9, 14, 16, and 18*

As set out above, "[b]efore a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 840 (U.S. 1999). Petitioner failed to allege Grounds 1 through 9, 14, 16, and 18 in his appeal to the Illinois Supreme Court. Thus, all of these claims are procedurally defaulted.

If Petitioner can show "good cause" for his failure to raise the issue on direct appeal or that a "fundamental miscarriage of justice" would result from the default, the court may grant a writ of *habeas corpus* even in the case of procedural default. *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Promotor v. Pollard*, 628 F.3d 979, 885 (7th Cir. 2010). "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). Petitioner has presented no new evidence of innocence and argues that each of these claims is defaulted because of counsel's ineffectiveness on direct appeal. "Ineffectiveness compounded by ineffectiveness in this way would leave a section 2255 motion as the only viable means for a

defendant to seek relief from the errors of his trial lawyer." *Bond v. United States*, 1 F.3d 631, 635 (7th Cir. 1993). However, Petitioner did not argue ineffective assistance of appellate counsel in state court, and the claim itself is defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) ("[A]n ineffective-assistance-of-counsel claim asserted as a cause for the procedural default of another claim can itself be procedurally defaulted.").

To raise the issue of ineffective assistance of counsel at the collateral stage, Petitioner must have a valid reason for postponement. *Macchione v. United States*, 205 F. Supp. 2d 888, 890 (N.D. Ill. 2002). Petitioner cites to *Macchione* to support his argument, but provides no evidence or argument showing a valid reason for his postponement. Specifically, Petitioner states numerous times in both his Petition and Reply that he was represented by the same counsel at trial and on appeal. However, Petitioner was represented by different attorneys at the trial and the appellate levels. (Resp. Exh. A - X). As Petitioner provides no valid reason for postponement of his claims of ineffective assistance, Grounds 1 - 9, Ground 16, and Ground 18 are all procedurally defaulted.

Petitioner's Ground 14 argues that he was denied due process when the prosecutor made assertions in closing argument that were unsupported by the trial evidence. Specifically, that prosecutor's references to "Pops," "Shorty G," and Corey Flagg, apparent criminals, during closing argument were in error because they were unsupported by evidence at trial. However, Petitioner did not make this argument to the Illinois Appellate Court. Petitioner argued that prosecutor's references in closing argument were in error because they were unduly prejudicial. Thus, Ground 14 is procedurally defaulted.[1]

---

[1] Even if Petitioner did present Ground 14 on direct appeal, the Illinois Appellate Court found that Petitioner's objections to comments made by the prosecutor during closing argument were waived because Petitioner did not raise this issue in a post-trial motion.

*Grounds 10 and 11*

Petitioner argues in Grounds 10 and 11 of his Petition:

10. He was denied due process when Dyer entrapped him into committing solicitation of murder and solicitation of murder for hire and was denied his right to effective assistance of counsel when trial counsel and appellate counsel failed to preserve this claim for appeal and failed to investigate this claim;

11. he was denied due process and the effective assistance of counsel when the affirmative defense of entrapment "was not applied" to him.

Petitioner did not argue on direct appeal or on postconviction appeal that he was denied due process because the "defense of entrapment was not applied to him" and because Dyer entrapped him into committing solicitation of murder and solicitation of murder for hire. Thus, any claims in Grounds 10 and 11 that he was denied due process are defaulted. Petitioner's claims of ineffective assistance of counsel are likewise procedurally defaulted because Petitioner did not make this argument to the Illinois Appellate Court or in his PLA to the Illinois Supreme Court. As in Grounds 1- 9, 16 and 18, Petitioner provides no valid reason for postponement of his claims of ineffective assistance.

Grounds 10 and 11 also appear to allege that trial counsel was ineffective for failing to request an entrapment jury instruction. The Supreme Court has recognized that, pursuant to the Sixth Amendment, "the right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970)). A claim of ineffective assistance of counsel is governed by the *Strickland* standard. *People v. Petrenko*, 931 N.E.2d 1198, 1203 (Ill. 2010). This standard possesses two components. First, Petitioner "must show that counsel's performance was deficient," meaning that counsel's errors were "so serious that counsel was not functioning as the counsel guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687 (internal

quotations omitted). Second, petitioner must show that counsel's "defective performance prejudiced the defense," meaning that "counsel's errors were so serious as to deprive [petitioner] of a fair trial, a trial whose result is reliable." *Id*.

When § 2254(d) applies, the question is no longer whether counsel's actions were reasonable. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Rather, the question is "whether there is a reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. "Establishing that a state court's application of *Strickland* [is] unreasonable under § 2254(d) is difficult." *Id*. Furthermore, the standard created by § 2254(d) is "highly deferential." *Id*.

Petitioner failed to provide any evidence or explanation in his Petition to show that the alleged errors made by trial counsel were such that his performance was deficient and that the deficient performance prejudiced Petitioner at trial. In the Petitioner's Petition, he merely recited what was said in both the prosecutor's and Defendant's closing arguments. Petitioner failed to show how these arguments rose to the level of ineffective counsel. Further, under Illinois law, "[t]he defense of entrapment is only available to a defendant who admits committing the acts which constitute the crime for which he is claiming entrapment." *People v. Gulley*, 36 Ill. App. 3d 577 (5th Dist. 1976). Petitioner denied committing the charged offenses and "steadfastly denied ever requesting or procuring another person to kill Larry Holcomb." (Resp. Exh. I at 6). As found by the Illinois Appellate Court, Petitioner could not assert entrapment as a defense and was not prejudiced by trial counsel's failure to request an entrapment instruction. (Resp. Exh. I.) Thus, Grounds 10 and 11 are barred by § 2254(d).

*Grounds 12 and 13*

Petitioner argues that his due process was violated when the trial court allowed the State to introduce evidence of his relationships with apparent criminals and gang members and

9

evidence of his participation in Wardella Winchester's murder. To show that the admission of prior bad acts evidence is a violation of due process, Petitioner must show that "the introduction of this type of evidence is so extremely unfair that its admission violates 'fundamental conceptions of justice.'" *Dowling v. United States*, 493 U.S. 342 (U.S. 1990). The Illinois Appellate Court found that the admission of the evidence at issue was not in error and Petitioner failed to show that this decision resulted in an unreasonable application of the "fundamental conceptions of justice" standard of § 2254(d)(1). (Resp. Exh. C). The evidence of Petitioner's role in Wardella Winchester's murder and his relationships with apparent criminals and gang members were relevant to Petitioner's motive for committing the charged offenses and to provide rebuttal to Petitioner's defenses. Petitioner fails to show that the admission of the evidence at issue was so unfair as to violate the "fundamental conceptions of justice" or that the state court was unreasonable in its finding, thus Grounds 12 and 13 are barred by § 2254(d).

*Ground 15*

Petitioner claims that the prosecutor in the jury trial incorrectly argued the law of solicitation of murder and solicitation of murder for hire, and this error violated his due process. This claim was not expressly addressed in the reviewing court's decision. The Supreme Court held that:

> 28 U.S.C.S. § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits. Rather, when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.

*Johnson v. Williams*, 133 S. Ct. 1088, 1091 (2013). This presumption "is a strong one that may be rebutted only in unusual circumstances." *Id.* at 1096. Petitioner provides no

evidence or convincing argument that this situation rises to the level of the "unusual circumstances" required to rebut this presumption.

Petitioner argues that the prosecutor told the jury "that there is really no difference" between the instructions for solicitation of murder and solicitation of murder for hire." (Dkt. 1.) As noted by Respondent, the prosecutor instead argued that "on the facts of this case, if petitioner was guilty of solicitation of murder, then he necessarily was guilty of solicitation of murder for hire because hitmen do not work for free." (Resp. at 23.) Further, the Illinois Appellate Court noted in its decision as set out above, that Investigator Dyer testified that in return for killing Holcomb, Petitioner offered to protect Dyer while he was incarcerated and that Petitioner would take care of Dyer financially when Petitioner got out of prison. (Resp. at 6.) For this reason, Petitioner's Ground 15 is also barred.

*Ground 17*

The Petitioner argues that his due process was violated when the trial court denied his motion for a directed verdict. When ruling on a motion for directed verdict, "[t]he evidence of the nonmovant (sic) is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Drawing all justifiable inferences in the State's favor, the trial judge determined that there was not enough evidence to warrant a directed verdict. The Illinois Appellate Court found that there was sufficient evidence to support Petitioner's convictions, and there is no evidence that this determination was unreasonable such that the decision should not be accorded due deference. (Resp. Exh. 7.) Therefore, Ground 17 is also barred.

*Certificate of Appealability*

"A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. In addition, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22. Seventh Circuit Rule 22(b) states: "In a *habeas corpus* proceeding in which detention complained of arises from process issued by a state court, or in a 28 U.S.C. § 2255 proceeding, the applicant cannot take an appeal unless a circuit justice or a district court judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."

To obtain a certificate of appealability, petitioner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id*. Petitioner has failed to do so. Thus, a certificate of appealability shall not issue.

## CONCLUSION

For all the reasons discussed above, Petitioner's Petition for Writ of *Habeas Corpus* is denied. Additionally, a certificate of appealability shall not issue.

Date: __February 11, 2016__

JOHN W. DARRAH
United States District Court Judge